## The County of Schuylkill *versus* Copley.

1. A bond signed by an illiterate obligor under a misrepresentation of its contents is not his deed, and may be avoided under the plea of *non est factum*.
2. Where a bond is signed with a knowledge of its contents on an inducement by a misstatement of facts, it is the deed of the obligor, but may be avoided by the misstatement.
3. One who has been convicted and is undergoing his sentence for embezzlement as a public officer is a competent witness.
4. The nature of the offence, not its punishment, determines its character as to infamy.
5. The tendency of the judicial mind is against objecting to testimony.

January 20th 1871.    Before Thompson, C. J., Read, Agnew and Williams, JJ.    Sharswood, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county*: Of January Term 1870, No. 369½.

This was a feigned issue, directed on the 21st of March 1868, to be formed between Peter Copley as plaintiff and The County of Schuylkill defendant, to try whether a bond, on which judgment had been entered, purporting to have been executed by Copley and others to the county of Schuylkill, was the bond of Copley.

The bond in question was an official bond, dated June 30th 1865, and was in the penalty of $26,012; it purported to have been executed by Thomas Fogarty, Peter Copley, and fourteen other persons to The County of Schuylkill. It recited that Fogarty had been appointed tax collector of Mahanoy City and had received a tax duplicate amounting to $13,006, and had taken upon himself the duty of collector aforesaid. The condition was that Fogarty should collect and pay over to the county treasurer or account for the whole amount of taxes charged in the duplicate.

Copley's name appeared on the bond with his mark, witnessed by Edward Britt.

On the trial, January 31st 1870, before Ryon, P. J., Copley testified, that he could not write, that he never made his mark to the bond nor authorized any one to make it for him; that he did not go bail for Fogarty; that Fogarty asked him to sign a petition " to get the tax instead of Michael Groody."

Edward Britt testified that the name "Edward Britt" as witness was not his signature; that he did not see Copley sign or make his mark; that witness was never asked to sign as witness; that he could not write his name; that he did not authorize any one to write his name for him; that he never saw the bond till he saw it in court.

The defendant gave evidence tending to show that Copley did sign the paper under representations that it was a petition on behalf of Fogarty for his appointment as tax collector.

The defendant offered Thomas Fogarty, a convict serving out

[Schuylkill County v. Copley.]

a term of imprisonment for defaulting as tax collector. Defendant offered to prove by him that the plaintiff signed the bond, &c.

Plaintiff objected upon the ground of the incompetency of the witness, the offer was rejected and a bill of exceptions sealed.

The defendant asked the court to charge:—

"That if the jury believe that Copley put his name to this bond, or authorized any one to sign it for him, it is immaterial whether he was deceived by Fogarty in the matter or not, unless it be shown that the county was aware of that before taking the bond."

The court charged, that if the plaintiff made his mark, or authorized it to be made for him as surety upon this bond, the verdict should be in favor of the defendant.

If, however, that mark was forged or signed by the plaintiff under fraudulent misrepresentations, that it was but a petition to get the appointment to collect the duplicate, the plaintiff not being informed of the contents of the paper, and if he could not read, the verdict should be for the plaintiff.

The verdict was for the plaintiff.

The defendant took a writ of error and assigned for error, not affirming defendants' point, the charge as above given and rejecting Fogarty as a witness.

*A. W. Schalck* (with whom was *G. D. B. Keim*), for plaintiff in error.—A fraud practised by a principal in obtaining the signature of the surety, does not discharge him from his obligation to the obligee, unless such fraud was with the knowledge or consent of the obligee: Graves v. Tucker, 10 S. & M. 9. Notice is necessary, or such acts as a statute characterizes as fraudulent: Dennis v. Burritt, 6 Cal. 607. Fraud is never to be presumed: Stewart v. English, 6 Ind. 176; Kellman v. Smith, 18 Texas 835. Delivery of a bond to the payee is absolute, its effect cannot be controlled by parol: Plank Road Co. v. Stephens, 10 Ind. 1; Ferguson v. Glaze, 12 La. An. 667; Sproule v. Lawrence, 33 Ala. 674. The fact that a surety is unlettered, raises no presumption against its validity: Ellis v. McCormick, 1 Hilton (N. Y. C. P.) 1313. There is no privity between the creditor and the sureties upon a constable's bond: Rutland v. Paige, 24 Vt. (1 Deane) 181. The character of the undertaking cannot be varied by parol: Bank of Albion v. Smith, 27 Barb. (N. Y.) 489; Speer v. Whitfield, 2 Stockton (N. J.) 107; Ruiz v. Morton, 4 Cal. 359; Harper v. Pounds, 10 Ind. 32. A contract which parties intended to make, but did not make, cannot be set up in the place of one which they did make, but did not intend to make: Sanford v. Howard, 29 Ala. 684; Sanborn v. Chittenden, 1 Williams (Vt.) 171; Billings v. Billings, 10 Cush. (Mass.) 178. The declarations of the maker of a note made in the absence of the

[Schuylkill County v. Copley.]

surety are not admissible in evidence against him: Dexter v. Clements, 17 Pick. 175. The execution of the bond may be proved by the admissions of the obligor or otherwise: Fritz v. Commissioners, 5 Harris 131; Taylor v. Meekly, 4 Yeates 79; Conrad v. Farrow, 5 Watts 536; Garrett v. Gonter, 6 Wright 143. A bond in the hands of the obligee cannot be declared invalid, because of some alleged understanding among the obligors themselves: Keyser v. Keen, 5 Harris 327; Grim v. School Directors, 1 P. F. Smith 219. A party who seeks to relieve himself from his bond for actual fraud must establish that there was a false representation which actually misled him to his hurt: Fulton v. Hood et al., 10 Casey 365; Bredin v. Bredin, 3 Barr 81. Fraud among the debtors on a note cannot operate to the injury of the discounting bank: Irvine v. Lumbermen's Bank, 2 W. & S. 206. The declarations of an obligor are not evidence to destroy a bond given by him: Wolf v. Carothers, 3 S. & R. 240; Whiting v. Johnson, 11 Id. 328. Declarations of persons combining to defraud are not evidence against an absent party without evidence of combination: Helser v. McGrath, 8 P. F. Smith 458; Slate v. Peck, 53 Maine 284. Fogarty's offence was not infamous; his credibility was for the jury: Starkie on Ev. 117, 118, Penal Code March 31st 1860, § 65, Pamph. L. 400, Purd. 229, pl. 73; Commonwealth v. Shaver, 3 W. & S. 342; Bickel's Ex'rs v. Fasig's Adm'rs, 9 Casey 465; 1 Greenlf. Ev. § 373; 1 Phillips's Ev. 23, note 13; Wharton's Am. Crim. Law, § 760; Little v. Gibson, 39 N. H. 505; Shay v. People, 4 Parker (N. Y.) 353; Shay v. People, 22 N. Y. (8 Smith) 317; Wharton's Am. Criminal Law, § 761.

*T. H. Walker* (with whom was *M. Strouse*), for defendant in error.—Copley having been defrauded could not be bound whether the county knew it or not: Michener v. Cavender, 2 Wright 334. If there was a misrepresentation of the contents of the paper, of which Copley was not informed, and he an illiterate man, the bond would be worthless and not binding upon him: Green v. North Buffalo Tp., 6 P. F. Smith 110; Marshall v. Gougler, 10 S. & R. 164; Henning v. Werkheiser, 8 Barr 518; Fulton v. Hood et al., 10 Casey 365. Fogarty was not a competent witness. There is no distinction under the English statutes between larceny and embezzlement, which is a species of larceny: Roscoe's Criminal Evidence 414; Commonwealth v. Rogers, 7 Met. 500. They cited also Sinclair v. Healy, 4 Wright 417; Green v. Humphry, 14 Id. 212.

The opinion of the court was delivered, February 9th 1871, by Agnew, J.—This was a feigned issue to try the question whether a certain bond, on which judgment had been entered under a warrant of attorney, was the deed of Peter Copley, as one of the sureties of

[Schuylkill County v. Copley.]

Thomas Fogarty, a collector of taxes. It was proved on the trial that Fogarty obtained the signature of Copley, who was an illiterate man, by representing to him that the paper was a petition to the county commissioners for his appointment as tax collector. The county contended that the deception mattered not, unless it be shown that the county had a knowledge of the fraud before accepting the bond. The court below held that the misrepresentation of the contents of the paper avoided it as a bond. The issue, therefore, was the same as if, to a declaration on the bond, *non est factum* had been pleaded. The instruction of the court was right and follows the distinction stated in Green *v*. North Buffalo Township, 6 P. F. Smith 114, between a defence resting upon facts which are misstated in order to induce a party to enter into a bond, the contents of which he knows; and one resting on a misrepresentation of the *contents* of the instrument itself, to an *illiterate* person. In the former it was said the bond is the obligation of the party who seals it, but is avoided by the false inducement to enter into it; in the latter it is *not his deed* or bond at all. No authority was cited for this elementary principle, and it is argued that the second proposition is unsound. But it was the first resolution in Thoroughgood's Case, in the time of Lord Coke, 2 Reports, 9 b, in these words: "First, that although the party to whom the writing is made, or other by his procurement, doth not read the writing; but a stranger of his own head read it, in other words than it in truth is; yet it shall not bind the party who delivereth it; for it is not material who readeth the writing, so as he who maketh it be a layman, and being not lettered, be (without any covin in himself) deceived, and that is proved by the usual form of pleading in such a case, that is to say, that he was a layman and not learned and that the deed was read to him in other words, &c.; generally, without showing by whom it was read." The second resolution in Thoroughgood's Case was that an illiterate man need not execute a deed before it is read to him in a language he understands; but if he do, without desiring it to be read, the deed is binding. And see 2 Black's Com. *304–308. And says Mr. Chitty, in his Pleadings, Vol. I., *483, The defendant may give evidence under the plea *non est factum* that the deed was *void* at common law *ab initio*; or that it was obtained by *fraud*; or whilst the party was drunk, a married *woman* or a lunatic; or that it became void after it was made and before the commencement of the action, by erasure, alteration, addition, &c. See also 1 Saunders on Pl. & Ev. *407. The very point in this case was decided in Stoever *v*. Weir, 10 S. & R. 25. That was an action on a single bill to which a defence was set up that the writing had been obtained by falsely reading it as a receipt, and requesting the defendant to sign it as a witness. The plea setting forth the facts specially was treated as a special *non est factum*.

[Schuylkill County *v.* Copley.]

See also Bauer *v.* Roth, 4 Rawle 93, 94, per Kennedy, J. These authorities show that the learned judge committed no error in his charge.

But we think the court erred in the rejection of Thomas Fogarty as a witness on the ground of *infamy.* Fogarty had been convicted and sentenced for embezzlement of the county's money, as a tax collector, under the 65th section of the Act of 31st March 1860, Brightly's Dig. 229, pl. 73; and was in prison under his sentence. The punishment of the offence of embezzlement under this section is imprisonment by separate or solitary confinement at labor not exceeding five years, and a fine equal to the amount of the money embezzled. The punishment is the same kind as that inflicted for infamous offences in Pennsylvania; but it is now settled that it is not the nature of the punishment, but of the offence, which determines its infamous character : 2 Russell on Crimes 974; 1 Greenleaf's Ev., § 372, in note 3; 3 Casey 465. Infamous crimes are treason, felony, and every species of the *crimen falsi,* such as forgery, perjury, subornation of perjury, and offences affecting the public administration of justice; such as bribing a witness to absent himself, and not to give evidence, and conspiracies to obstruct the administration of justice, or falsely to accuse one of an indictable crime : 2 Russell on Crimes 973; 1 Greenleaf's Ev., § 373. This is clearly the limitation of the infamous crimes as understood in this state; as may be seen in the following cases : Commonwealth *v.* Shaver, 3 W. & S. 342–3; Bickel's Ex'r *v.* Fasig's Adm'r, 9 Casey 464–5. And see argument of counsel in Commonwealth for use *v.* The Ohio and Pennsylvania Railroad Co., 1 Grant 331, 2, 3, 4.

There are many offences, involving both falsehood and fraud, which are punished as infamous crimes are usually punished in this state, and yet are not infamous crimes, and will not exclude the offenders as witnesses : Commonwealth *v.* Shaver, and Commonwealth *v.* Ohio and Penna. Railroad Co., *supra ;* 1 Greenleaf's Ev., § 373. In Massachusetts it is held that the offences of receiving stolen goods knowingly, and cheating by false pretences, will not render the offenders infamous : Commonwealth *v.* Rogers, 7 Metcalf 500; Utley *v.* Menich, 11 Id. 302; and see 1 Whart. C. L. § 761. As remarked by Woodward, J., in 9 Casey 465, the tendency of the judicial mind is against objections to competency. Such also is the direction of legislation, to be seen in § 181 of the Act of 31st March 1860, Brightly's Dig. 247, pl. 190, which gives to a convict who endures his punishment, for a felony or any misdemeanor punishable with imprisonment at labor, the advantage of a full pardon, except as to wilful and corrupt perjury. Fulfilling his sentence, therefore, restores the offender to competency as a witness. The Act of 15th April 1869, declaring that no interest or policy of law shall exclude a party or

[Schuylkill County v. Copley.]

person from being a witness in any civil proceeding, runs in the same direction. In all these cases the objection goes to the credibility of the witness rather than to his competency. For the error in rejecting the witness, the judgment is reversed, and a *venire de novo* awarded.